UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALEX MELENDEZ,

    Plaintiff,

v.                              Case No. 3:20cv356-LC-HTC

OFFICER PRESLEY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's motion to dismiss Plaintiff's claims for injunctive relief. ECF Doc. 22. On August 10, 2020, the Court notified Plaintiff that he had thirty (30) days to respond to Defendant's motion, ECF Doc. 24, but Plaintiff has not filed a response.[1] Upon consideration, the undersigned respectfully recommends that Defendant's motion to dismiss be GRANTED.

**I.    BACKGROUND**

Plaintiff Alex Melendez is an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Suwannee Correctional Institution ("Suwannee CI"). ECF Doc. 11 at 2. Plaintiff brings this action under 42 U.S.C. § 1983 for

---

[1] Although the undersigned addresses the motion on the merits, the undersigned notes that under the Local Rules, the Court may grant a motion by default if an opposing party does not file a memorandum in opposition. Fla. N.D. Loc. R. 7.1(H).

alleged violations of the Eight Amendment. He sues one defendant, Officer Presley, an Okaloosa Correctional Institution ("Okaloosa CI") employee.[2] *Id.* Plaintiff's claims arise out of a November 3, 2019 incident at Okaloosa CI, in which Defendant allegedly grabbed Plaintiff's penis. Plaintiff's second amended complaint sets forth the factual allegations that follow, which are accepted as true for purposes of this report and recommendation.

Prior to the subject incident, on November 2, 2019, Defendant approached Plaintiff's cell door and said "that he wanted [Plaintiff] to show him [Plaintiff's] penis." *Id.* at 5. Plaintiff told Defendant to get away from Plaintiff's cell door and informed Defendant that Plaintiff is "not gay." *Id.* Defendant then told Plaintiff that "[Defendant] was in love with [Plaintiff] and that he wanted to suck [Plaintiff's] penis." *Id.* Plaintiff told Defendant to leave and that he wanted to speak with "Sgt. Small," but Defendant refused to notify Sgt. Small. *Id.* Plaintiff was very "uncomfortable and upset," and he refused to accept his meal tray from Defendant. *Id.*

The following day, November 3, 2020, Defendant returned to Plaintiff's cell door. *Id.* Defendant opened the door flap on Plaintiff's cell door and began speaking to Plaintiff. *Id.* Defendant then "quickly reached in and grabbed [Plaintiff's] penis

---

[2] In the second amended complaint, Plaintiff refers to Defendant as "Presely," but the Court subsequently directed the clerk to change the spelling of Defendant's name on the docket to the correct spelling, "Presley." ECF Doc. 24.

and genitals and squeezed very hard as [they] tussled for about six to ten seconds." *Id.* Plaintiff screamed, but Defendant "wouldn't let go of his firm grip on [Plaintiff's] penis and gentials [sic]." *Id.* Plaintiff asserts that this action was "extremely painful." *Id.*

Lieutenant Ellis (who is not a defendant in this action) came to Plaintiff's cell door and saw that Plaintiff was "out of breath and in extreme pain," and Plaintiff told Ellis what had happened. *Id.* Ellis did not believe Plaintiff and placed Plaintiff on property restriction. *Id.* Someone notified "Captain Settlemires" (who is not a defendant in this action), and Settlemires "retaliated on Plaintiff by spraying Plaintiff with chemicals [sic] agent and [keeping Plaintiff] on property restriction." *Id.*

Plaintiff then told "Warden Gray" (who is not a defendant in this action) what happened, and Gray "told [Plaintiff] that [Plaintiff] was going to be tortured the whole time [Plaintiff] was under his supervision because of the way [Plaintiff] acted and behaved from 2011–2013 . . . ." *Id.* at 6. Plaintiff informed various staff members (none of whom are defendants in this action) and "filed grievances and P.R.E.A." *Id.* The staff "refused to help [Plaintiff], . . . falsified documents, forged [Plaintiff's] signature[,] and conspired to cover up this incident." Defendant "told [Plaintiff] to keep [his] mouth shut[,] and [Defendant] would bring [Plaintiff] a cell phone and drugs to keep [his] mouth shut about [Defendant] grabbin[g] [Plaintiff's] penis and the things that [Defendant] said to [Plaintiff]." *Id.*

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

In reviewing a *pro se* plaintiff's pleadings, a court must liberally construe the plaintiff's allegations. See *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Bingham*

*v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). However, the duty of a court to construe *pro se* pleadings liberally does not require the court to serve as an attorney for the plaintiff. *Freeman v. Sec'y, Dept. of Corr.*, 679 F. App'x 982, 982 (11th Cir. 2017) (citing *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.  DISCUSSION

In the second amended complaint, Plaintiff seeks the following injunctive relief: (1) Defendant be ordered to "[s]top [t]he [h]arrasments" [sic] and "[s]top [t]he [a]ctions [a]gainst" Plaintiff, and (2) Defendant be terminated from his employment at Okaloosa CI. ECF Doc. 11 at 7. Defendant argues that Plaintiff's first claim for injunctive relief should be dismissed as moot and the second claim should be dismissed as improper. ECF Doc. 22 at 3, 5.

### A.  Plaintiff's Request That Defendant "Stop the [Harassments]"

As an initial matter, Plaintiff is not entitled to the injunction he seeks because his request fails the specificity requirement of Rule 65(d). Federal Rule of Civil Procedure 65(d) requires an order granting an injunction to "state its terms specifically" and to "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B), (C). "The command of specificity is a reflection of the seriousness of the consequences which may flow from a violation of an injunctive order." *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 897 (5th Cir.

1978). "An injunction must be framed so that those enjoined know exactly what conduct the court has prohibited and what steps they must take to conform their conduct to the law." *Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1222 (11th Cir. 2000).

Plaintiff, however, has not identified with any detail or precision what conduct he considers "harassing" or what conduct he seeks to enjoin. *See Wynn v. Cty. Bd. of Educ. of Richmond Cty.*, 2006 WL 8436156, at *2 (S.D. Ga. Nov. 14, 2006) (finding a request for an injunction against defendants "to cease and desist from further unlawful activity" to lack specificity required under Rule 65). Moreover, Plaintiff essentially seeks an "obey the law" injunction, which is unenforceable in this Circuit. *See, e.g., Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999) (holding that injunction that prohibited municipality from discriminating on the basis of race in its annexation decisions "would do no more than instruct the City to 'obey the law'" and therefore was invalid).

As an additional matter, even assuming Plaintiff amended his second amended complaint to provide more specificity, his claim for injunctive relief is nonetheless moot because he is no longer at Okaloosa CI. Instead, by the time Plaintiff filed his amended complaint (ECF Doc. 7) on March 5, 2020, and second amended complaint

(ECF Doc. 11) on April 10, 2020, Plaintiff had been transferred to Suwannee CI, where he is currently incarcerated.³  ECF Docs. 7, 11.

Courts do not sit to render advisory opinions. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  Article III of the United States Constitution confers jurisdiction on the district courts to hear and determine "cases" or "controversies." U.S. Const. art. III, § 2.  An actual controversy must exist when the case is pending. *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974).  Where the relief requested is injunctive, it is possible for events subsequent to filing the complaint to make the matter moot.  *National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997) (change in statute); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner); *Tawwab v. Metz*, 554 F.2d 22, 23 (2d Cir. 1977) (change in policy).

A claim becomes moot when the controversy between the parties is no longer alive because one party has no further concern in the outcome.  *Weinstein v. Bradford*, 423 U.S. 147 (1975); *Flast v. Cohen*, 392 U.S. 83, 95 (1968) (holding that "no justiciable controversy is presented . . . when the question sought to be adjudicated has been mooted by" developments subsequent to filing of the complaint).  "Article III requires that a plaintiff's claim be live not just when he first

---

³ According to the FDOC's Corrections Offender Network, Plaintiff is still confined at Suwannee CI.  *See* http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=W25139&TypeSearch=AI.

brings suit, but throughout the litigation." *Tucker v. Phyfer*, 819 F.2d 1030, 1034 (11th Cir. 1987). "[I]t is not enough that a dispute was very much alive when the suit was filed." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 1253, 108 L. Ed. 2d 400 (1990). Because mootness is jurisdictional, dismissal is required when an action is moot, as a decision in a moot action would be an impermissible advisory opinion. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

Moreover, "[e]quitable relief is a prospective remedy, intended to prevent future injuries." *Adler v. Duval County School Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). For that reason, "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Id.*; *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citation omitted) ("Logically, 'a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.'").

In the context of a Section 1983 action filed by a prisoner, such as this case, a prayer for declaratory or injunctive relief becomes moot upon the transfer or release of that prisoner from the facility where his cause of action arose. *See, e.g.*, *Owens v. Centurion Med.*, 778 F. App'x 754, 758–59 (11th Cir. 2019) ("[A] prisoner's transfer or release from a correctional facility generally will moot his claims for injunctive relief in a § 1983 action."); *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th

Cir. 1988) (noting that, in this circumstance, there is no longer a "case or controversy once the inmate has been transferred"); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("[A]n inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred. . . . Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects."); *see also Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986) (holding that after an inmate is transferred, there is neither a "reasonable expectation" nor a "demonstrated probability" that the inmate will return to the prison against which he sought injunctive relief, and therefore a claim for injunctive relief is moot).

Accordingly, since Plaintiff is no longer at Okaloosa CI, where Defendant works, any threat of future harm by the Defendant no longer exists. In other words, there is no need for the Court to order Defendant to cease harassing activities toward Plaintiff. Thus, the undersigned agrees with the Defendant that this claim for injunctive relief is moot and should be dismissed.

### B.  Plaintiff's Request That Defendant Be Fired

As stated above, Plaintiff also seeks to have this Court order that Defendant be fired. Since Plaintiff is no longer at Okaloosa CI and no longer under the authority of Defendant, this request is also moot, as Plaintiff no longer needs protection from

Defendant (even assuming that Defendant had engaged in any wrongful conduct towards Plaintiff).

Additionally, such injunctive relief is improper and beyond the reach of this Court. "[F]ederal courts have no authority to address state officials out of office or to fire state employees or to take over the performance of their functions." *Newman v. State of Ala.*, 559 F.2d 283, 288 (5th Cir. 1977),[4] *rev'd in part on other grounds sub nom. Alabama v. Pugh*, 438 U.S. 781 (1978). The decision whether to terminate a correctional officer's employment is for his or her supervisors, not the courts. *Harris v. Whitehead*, 2007 WL 2300964, at *1 n.1 (M.D. Ala. Aug. 8, 2007); *see also Fortson v. Gonzo*, 2007 WL 1385620, at *2 (M.D. Ga. May 7, 2007) ("As an initial matter, the Court notes it has no authority to order that [a Defendant prison officer] be fired. The decision whether to fire [the Defendant] is for his supervisors . . . , not this Court."). Simply, "[a] federal court does not involve itself in a defendant's employment relationship with his employer." *Body v. Thornton*, 2013 WL 1915014, at *5 (S.D. Ala. Apr. 17, 2013) ("[P]laintiff's request to discipline the defendants fails to state a claim, which subjects his injunctive relief request to dismissal . . . ."), *report and recommendation adopted*, 2013 WL 1914935 (S.D. Ala. May 7, 2013).

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981.

## IV. CONCLUSION

Accordingly, it is RESPECTFULLY RECOMMENDED that:

Defendant's motion to dismiss Plaintiff's claims for injunctive relief (ECF Doc. 22) be GRANTED.

At Pensacola, Florida, this 5th day of November 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**